IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRITTANY FOXX and KEITH PERKINS for themselves and all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CASE NO. 1:18-cv-00541 |
| FIRMUS MANAGEMENT AND CONSTRUCTION LLC, | § § § § | |
| *Defendants*. | § § | |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT WITH JURY DEMAND**

Brittany Foxx and Keith Perkins ("Plaintiffs"), for themselves and all others similarly situated, files this Original Class Action Complaint with Jury Demand complaining of Firmus Management and Construction, LLC.

**I. PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs are, and were during all times relevant to this case, individuals residing in Bexar County, Texas, and for diversity purposes, they are citizens of Texas.

2. Defendant Firmus Management and Construction LLC ("Firmus" or "Defendant") is a Kansas limited liability company registered to do business in the State of Texas, with its principal office located at 5600 South Quebec Street, Suite 110A, Greenwood Village, Colorado 80111. For diversity purposes, Firmus is a citizen of Kansas and Colorado. Firmus may be served with process by serving its registered agent for service in Texas, CT Corporation, at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

3. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(d) (the Class Action Fairness Act or "CAFA") because Defendant is a citizen of a state different from

Plaintiffs, the amount in controversy exceeds $5 million exclusive of interest and costs, and there are more than 100 members of the class.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because Plaintiffs' claim arose in the Western District of Texas.

5. Plaintiffs and the putative class members (the "Class" as defined below) have standing to bring the claims in this complaint under TEX. PROP. CODE § 92.019 because they are, and were during the Class Period, residential tenants in Texas under written form leases with Defendant as lessor or the purported owner, and were charged late fees as a result of late rent payment.

## II. INTRODUCTION AND BACKGROUND

6. This case seeks to certify a class of current and former residential tenants at apartment properties in Texas, including but not limited Algarita Village apartments, where Defendant, a Colorado based business, is the purported lessor and owner. Plaintiffs seek to recover statutory remedies for themselves and the Class for unreasonable and excessive rent late fees assessed during the Class Period under TEX. PROP. CODE § 92.019.

7. TEX. PROP. CODE § 92.019 ("Section 92.019") was enacted by the Legislature for the stated purpose of protecting "vulnerable" residential tenants from "excessive fees and unwarranted penalties."[1] In an effort to protect tenants, Section 92.019 places limits on the late

---

[1] The legislative history of H.B. 3101 says: "Hardworking Texans deserve affordable housing without landlords ... charging excessive fees, or imposing unwarranted penalties that could take money needed for food, education, healthcare, and retirement..." http://www.lrl.state.tx.us/scanned/hroBillAnalyses/80-0/HB3101.PDF. The Texas Legislature's bill analysis for what became Section 92.019 found that "[a]partment tenants are often vulnerable to unfair practices of some landlords who abuse their landlord-tenant relationship for monetary gain" and "[t]hese practices include … charging excessive late fees[.]" House Comm. on Business and Commerce, Bill Analysis, C.S.H.B. 3101, 80th Leg., R.S. (May 2007) (emphasis added); Senate Research Center, Bill Analysis, C.S.H.B. 3101, 80th Leg., R.S. (May 2007) (same).

fees a landlord can assess. Under Section 92.019(a), the landlord may not charge a tenant a late fee for failing to pay rent unless:

> (1) notice of the fee is included in a written lease;
>
> (2) **the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent**; and
>
> (3) the rent has remained unpaid one full day after the date the rent was originally due.

Section 92.019(a)(1)-(3) (emphasis added).

8. If a tenant pays rent a few days late, it is unlikely the landlord suffers any damages that meet the statutory test. Defendant uses automated computer systems to track tenants who pay rent late and to charge them late fees. Also, payments are recorded and stored in Defendant's digital property management and accounting system.

9. On information and belief, the late fees assessed by Defendant represent a significant source of ancillary (non-rent) income, and are being used to either generate additional revenue or to serve as a penalty for late payment. Neither is permissible under the statute, which requires late fees to be a reasonable estimate of damages suffered. TEX. PROP. CODE Section 92.019(a).

10. It is no defense to a claim brought under Section 92.019 that "the tenant 'agreed' to the late fee in the lease." Section 92.019(d) expressly states that "[a] provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void."

11. Nor is it a defense that the tenant paid the late fee without protest, as "[p]ayment of the fee, charge, or other sum of money by a tenant does not waive the right or remedies provided by this section." Section 92.019(e).

12. A landlord who violates Section 92.019 is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees." Section 92.019(c).

13. Plaintiffs bring this action for themselves and all others similarly situated to recover relief specified under Section 92.019.

### III.  FACTUAL ALLEGATIONS

14. Plaintiffs are current residential tenants at Algarita Lakeside under a form lease used by Defendant. On or about May 19, 2017, Plaintiffs signed a fourteen (14) month lease with Defendant for an apartment unit for a term from May 19, 2017 through August 26, 2018 ("Plaintiffs' Lease"). **Ex. 1**.

15. Defendant did not use Texas Apartment Association ("TAA") form leases (as most Texas landlords use). Instead, Defendant used its own form lease for Plaintiffs and putative class members at Defendant's apartment properties in Texas. *See, e.g.*, **Ex. 1**.

16. In the lease form, including Plaintiffs' Lease, Defendant identified itself as the "Lessor" and "as agent for the owner." No other person or entity is identified or listed as the owner or the landlord in Plaintiffs' Lease, thus Defendant "purports to be the owner or lessor" and thus the landlord "in a written lease."[2]

---

[2] The Texas Property Code governs landlord-tenant relationships. Section 92.001(2) of the Texas Property Code defines the term "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." TEX. PROP. CODE § 92.001(2). Another section of the Texas Property Code that applies to landlords and tenants defines "landlord" to include both a "managing company" and a "managing agent." *See* TEX. PROP. CODE § 92.151(7) ("'Landlord' means a ... management company, or managing agent, including an on-site manager").[2] Still another section of the property code defines the term landlord to include the property manager. *See* TEX. PROP. CODE § 94.001 ("landlord" means "the owner or manager of a manufactured home community and includes an employee or agent of the landlord") (emphasis added). This shows the Legislature did not take a narrow or restrictive view of the term. Regardless of how the term "landlord" is defined or construed, here it does not

17. In Plaintiffs' Lease, Defendant included the following form language regarding payment of rent, that is believed to be in the Class members' form leases as well:

> **LATE CHARGES AND EVICTION PROCESS**   Should the Lessee(s) rent payment not be received in full, including any past due rent and/or charges, at the above-mentioned place of payment, within **three (3) days of the rent due date**, a late charge of **$50.00 will be added on the 4th of the month and $10.00 a day, thereafter, until paid in full**. Delays arising from the use of the mail by Lessee(s) to forward rent payments **shall not excuse** Lessee(s) from timely payment. All payments shall be applied to oldest invoice first....
>
> **CONCESSIONS**   ... LATE PAYMENTS: Above concessions and/or discount amount shall not apply to late payments.  If rent is not paid in full on or before the due date, you will owe the full rent amount stated in the contract plus any additional fees stipulated in your lease for that month.

18. Almost from the start, Plaintiffs had trouble with Defendant's online payment portal. While they intended to pay their rent by the first of the month, the payment portal often did not record rent as received by the first, resulting in Plaintiffs being charged late fees. When they contacted Defendant about the problem, Defendant waived some of the fees for several months, while other late fees were not waived and were paid by Plaintiffs when charged. However, Defendant later re-imposed all of the previously waived late fees, over Plaintiffs' protests, forcing Plaintiffs to pay all late fees charged to avoid being evicted from their unit. Plaintiffs continued their efforts to get Defendant to credit the late fees, but Defendant refused to do so.

19. A true and correct copy of Plaintiffs' electronic ledger, provided by Defendant, is attached as **Ex. 2**. It shows Plaintiffs were charged and paid numerous rent late fees. For example, in December 2017, Plaintiffs were charged an initial rent late fee of $75 on December 3, 2017 and three daily late fees of $10 on December 6, 2017, resulting in total late fees for that month of $105. On April 1, 2018, Defendant re-imposed a $75 initial late fee previously charged

---

matter because Defendant is to Plaintiffs and the Class as landlords and owners for the reasons explained above.

for July 2017. Several other previously charged and then waived late fees were re-imposed (re-charged) by Defendant *en masse* on April 1, 2018. All of the rent late fees charged by Defendant, through April 1, 2018, are reflected in Plaintiffs' electronic ledger maintained by Defendant. **Ex. 2**.

20. The initial late fees charged by Defendant ($75) during their tenancy were more than the $50 initial late fees specified by Plaintiffs' Lease. *See* **Ex. 1** (Lease) and **Ex. 2** (Ledger).

21. Plaintiffs paid all rent late fees charged by Defendant, and Defendant accepted all of the payments.

## IV.  CLASS ACTION ALLEGATIONS

22. Plaintiffs seek to represent a Class of similarly situated tenants. The Class, as defined below, consists of current or former residential tenants of Defendant's apartment properties in Texas during the Class Period. Because Defendant uses standardized lease forms, and has a centralized system and policies to bill and collect rent late fees from its residential tenants in Texas, it is likely that the Class has suffered the same or similar harm as Plaintiffs in the form of unlawful rent late fees.

23. Plaintiffs bring the claims for relief alleged in this complaint pursuant to FED. R. CIV. P. 23 on behalf of themselves and a class defined as follows (the "Class"):

> All persons during the Class Period who (i) were residential lease tenants in Texas under written leases where Defendant is listed as lessor or owner, and (ii) were charged (and which Defendant's records show as paid) at least one initial rent late fee.
>
> The "Class Period" means the period commencing four years prior to the date this case was filed and continuing to the date of entry of class certification order.
>
> The Class excludes the following persons:

6

   (i)  the judge(s) assigned to this case and his or her staff;
   (ii)  governmental entities;
   (iii)  Defendant and its affiliates;
   (iv)  persons who abandoned their apartment units without paying rent or who were evicted by Defendant for nonpayment of rent.

24. Plaintiffs are members of the Class they seek to represent, as detailed in the factual background and the claims for relief section of this complaint. The averments of fact and questions of law are common to the Class.

25. The Class is believed to include thousands of members. The Class is so numerous and spread out across the State of Texas that joinder of all members is impracticable. On information and belief, Defendant is the owner or purported owner and lessor of approximately 2,207 dwelling units in approximately nine apartment complexes primarily in Austin, but also in San Antonio and Houston, Texas. These include the following apartment properties:

- Algarita Lakeside (302 units), San Antonio
- Northhills Flats (154 units), Austin
- Greystone Flats (115 units), Austin
- Ironhorse Flats (205 units), Austin
- Algarita (206 units), Austin
- Mueller Flats (399 units), Austin
- Arcadian k/n/a Arabella (82 units), Austin
- Westside Flats (368 units), Houston
- Olympia Flats (376 units), Houston

26. This action is governed by Section 92.019. The leases in question are common, standardized, and consistent among the Class.

27. The averments of fact and questions of law common to the members of the Class

predominate over any question affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action is the superior way of resolving the claims raised in this case because:

    a.    The questions of law and fact are so uniform across the Class there is no reason why individual Class members would want to control the prosecution of their own actions at their own expense;

    b.    The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

    c.    The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each Class member and not just those who can afford to bring their own actions; and

    d.    Many, if not all, of the Class members may never discover Defendant's wrongful actions. Thus, in the absence of a class action, Defendant likely will be unjustly enriched to the detriment of unknowing Class members.

28.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members. The same statutory violations and breach of contract claims are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

29.    The injuries sustained by Class members flow, in each instance, from a common nucleus of operative facts. In each case, Defendant charged Class members excessive and prohibited late fees for rent in violation of Texas law.

30.    Class members have been damaged by Defendant's misconduct. Class members have been charged and have paid excessive amounts to Defendant, allowing Defendant to impermissibly profit by adding excessive and impermissible late fees for rent.

31.    Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs were charged excessive and impermissible late fees by Defendant for rent paid on time or only a

day or two late.

32. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are familiar with the basic facts underlying the Class members' claims.

33. Plaintiffs' interests do not conflict with the interests of the other Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class members.

34. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class members. The relief sought per individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendant's conduct. Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis. Even if Class members themselves could afford such individual litigation, the court system could not.

35. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. The Class is ascertainable. Defendant is required by law to maintain the records needed to identify the members of the Class, and on information and belief, this information is stored in Defendant's electronic property management databases, making the information relatively easy to retrieve.

36. Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief may be appropriate for the Class.

37.     For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### V.  CLAIM FOR RELIEF - VIOLATION OF SECTION 92.019

38.     Texas landlords are prohibited from charging their tenants any late fees on rent unless those fees are "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent."  TEX. PROP. CODE § 92.019(a)(2).  That means a landlord is prohibited from instituting a late fee scheme until or unless it first makes an estimate of its damages when tenants pay their rent but do so a few days late.  And then, the rent late fee policy adopted must be reasonably tied to that estimate of damages.  Otherwise, rent late fees are prohibited. A landlord may not use late fees as a profit-center or as a penalty to encourage tenants to pay their rent on time.

39.     On information and belief, Defendants made no attempt to estimate their damages from later-payers of rent when they implemented their punitive rent late fee scheme. Since Defendant did not meet this condition under Section 92.019, it was not permitted to charge Plaintiffs or the putative class any rent late fees whatsoever.  Defendant's standardized late fee formula on past due rent results in the Plaintiffs and the Class being assessed unlawful penalties that are inherently unreasonable, unconscionable, and are not tied to any rational measurement or estimation of Defendant's actual damages.

40.     Alternatively, Plaintiffs allege that the amounts estimated as "damages" by Defendant did not meet the statutory conditions, and therefore could not lawfully be charged to Plaintiffs or the Class.

41.     A landlord is prohibited from instituting a punitive late fee schedule that serves as a penalty or revenue-generating scheme. The rent late fee clause in the form lease used by

10

Defendant in the leases with Plaintiffs and the putative class are unenforceable penalties. Defendant's standard late fee formula on past due rent results in tenants at their apartment properties in Texas being assessed hefty penalty. Such an amount is inherently unreasonable, unconscionable, and not tied to any rational measurement or estimation of Defendant's actual damages caused by a tenant paying rent a few days late.

42. As set forth above, Defendant charged Plaintiffs and the Class impermissible late fees in violation of Section 92.019. Defendant's late fee scheme for past due rent at its apartment properties in Texas (a) was not predicated on an estimate of uncertain damages resulting from late payment of rent, and/or (b) does not bear a reasonable relationship to any damage it might have incurred. Because Defendant failed to satisfy the statutory requirements, it was not permitted to charge tenants any rent late fees, and is in violation of Section 92.019.

43. Plaintiffs seek to recover three times the amount of all rent late fees paid by Plaintiffs and the Class during the class period, along with a $100 penalty for each such violation per Plaintiff and Class member, attorney fees, interest, and costs of court.

## VI.  JURY DEMAND

44. Plaintiffs hereby demand a trial by jury and have tendered the appropriate fee.

## PRAYER

Plaintiffs seek an order of this Court certifying this case as a class action for the benefit of the Class with adequate notice to same.

Upon final hearing, Plaintiffs seek a judgment against Defendant for: (a) statutory damages under Section 92.019 equal to three times the amount of all unlawful rent late fees charged to the Plaintiffs and to the Class; (b) a statutory penalty equal to $100 for Plaintiffs and each Class member for each statutory violation of the code; (c) prejudgment and post judgment

interest at the highest rate allowed by law; (d) reasonable attorney fees; (e) court costs; and (f) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to injunctive relief and unjust enrichment relief.

    Respectfully submitted,

    By: */s/ Britton D. Monts*
    BRITTON D. MONTS
    State Bar No. 14303900
    THE MONTS FIRM
    401 Congress Ave., Suite 1540
    Austin, Texas 78701-3851
    bmonts@themontsfirm.com
    (512) 474-6092 – Telephone
    (512) 692-2981 – Facsimile

    R. MARTIN WEBER, JR.
    State Bar No. 00791895
    RICHARD E. NORMAN
    State Bar No. 00788128
    CROWLEY NORMAN LLP
    Three Riverway, Suite 1775
    Houston, Texas 77056
    rnorman@crowleynorman.com
    mweber@crowleynorman.com
    (713) 651-1771 – Telephone
    (713) 651-1775 – Facsimile

    JASON W. SNELL
    Bar No. 24013540
    THE SNELL LAW FIRM, PLLC
    1615 W. 6th Street, Suite A
    firm@snellfirm.com
    (512) 477-5291 – Telephone
    (512) 477-5294 – Facsimile

ATTORNEYS FOR PLAINTIFFS AND THE CLASS